UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 22-14263-CIV-CANNON/McCabe

FAULMAN INVESTMENT LTD,

    Plaintiff,
v.

JACKSON NATIONAL LIFE
INSURANCE COMPANY,

    Defendant.
_____/

**ORDER ACCEPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION [ECF No. 47]**

**THIS CAUSE** comes before the Court upon Defendant's Motion for Summary Judgment (the "Motion") and the Report and Recommendation ("Report") on that Motion issued by Magistrate Judge Ryon M. McCabe [ECF Nos. 33, 47]. On July 21, 2023, following referral, Judge McCabe issued a report recommending that the Motion be granted in part and denied in part [ECF No. 47]. Defendant filed Objections to the Report [ECF No. 48], to which Plaintiff responded [ECF No. 101].[1] The Court has reviewed the Report and the full record. For the reasons set forth below, the Report [ECF No. 47] is **ACCEPTED**, and the Motion [ECF No. 33] is **GRANTED IN PART AND DENIED IN PART.**

RELEVANT BACKGROUND

To facilitate understanding of Defendant's Objections to the Report, the Court summarizes the factual background as set forth in the Report [ECF No. 47 pp. 1–7]. In 1986, Jackson National Life Insurance Company ("Defendant") issued a whole life insurance policy (the "Policy") to Michael R. Faulman [ECF No. 1-1 ¶ 8]. The Policy had a death benefit of $1.5 million and became

---

[1] Plaintiff did not file her own objections to the Report.

active on July 9, 1986 [ECF No. 40 ¶ 1]. While there is a dispute as to the exact moment of the transfer, at a certain point, Mr. Faulman transferred ownership of the Policy to Faulman Invest Ltd [ECF No. 1-1 ¶ 9]. This Order refers to Mr. Faulman and his entity interchangeably as "Plaintiff."

The Policy contains three provisions that apply to the parties' dispute. First, the Policy allows the policy holder to borrow funds up to the "loan value."[2] Second, the Policy contains a "vanishing premium" provision, which allows the policy holder to pay the yearly premiums out of the accumulated value of the Policy [ECF No. 34-11 p. 13]. Finally, the Policy has a provision that provides Defendant the power to terminate the Policy for excessive indebtedness [ECF No. 34-11 p. 13]. The provision for termination, labeled "INDEBTEDNESS" in the Policy, states as follows, in pertinent part:

> This Policy will be terminated whenever the total indebtedness equals or exceeds the loan value. Notice will be mailed to the Owner's last known address and to the holder of any assignment of record at least thirty-one days before such termination.

[ECF No. 34-11 p. 13].

From 1986 through 1991, the parties agree that Plaintiff paid the annual premium payments of $16,085 to Defendant [ECF No. 40 ¶ 5]. These payments contributed to the Policy accumulating value. However, from 1992 through 2013, Plaintiff stopped paying the premiums and relied on the "vanishing premium" to make those payments. In addition, Plaintiff took out a $50,000 loan against the policy in 2014 [ECF No. 42-3]. The parties agree that Plaintiff sent checks in 2014, 2015, 2018, 2019, and 2020 [ECF No. 48 p. 1; ECF No. 42 ¶¶ 8, 10].

On October 8, 2021, Mr. Faulman died [ECF No. 40 ¶ 43]. About one month later, Plaintiff notified Defendant and made a claim on the Policy [ECF No. 42 ¶ 18]. On January 18,

---

[2] The Policy defines the Loan value as "the amount shown in the table of Guarantee Value for the Policy . . . or such greater value as may be determined in accordance with the provisions of the cash Surrender Value Section" [ECF No. 34-11 p. 13]

2

2022, Defendant denied the claim and cited to the pre-termination notice ("Notice") that it claims it sent to Plaintiff on or about July 26, 2021, and Plaintiff's failure to deposit the amount required to cover the balance [ECF No. 42 ¶ 98].

On June 21, 2022, Plaintiff filed this action in the Nineteenth Judicial Circuit in and for Indian River County, Florida [ECF No. 1-1]. Thereafter, on July 19, 2022, Defendant removed this action, citing diversity jurisdiction as the basis for federal subject matter jurisdiction [ECF No. 1 ¶ 10]. Plaintiff's Complaint alleges two causes of action: Count I for breach of contract, and Count II for declaratory judgment [ECF No. 1-1 ¶¶ 37–59]. As to Count I, Plaintiff alleges that Defendant breached its obligations under the Policy by failing to pay the Policy proceeds and by failing to provide any pre-termination notice ("Notice") pertaining to the alleged overdue loan payments [ECF No. 1-1 ¶¶ 43–45]. Plaintiff seeks a declaration of rights under Count II to determine the proper construction of the terms of the Policy and Defendant's duties and obligations pursuant to the Policy [ECF No. 1-1 ¶¶ 43–45].

## PROCEDURAL HISTORY

The Report recommends denying Defendant's Motion for Summary Judgment on Count I because genuine disputes of material fact persist on two issues: (a) whether Defendant had a right to terminate the Policy in the first instance, and (b) if so, whether Defendant mailed the Notice [ECF No. 47]. On Count II, the Report recommends granting summary judgment because Count II is entirely duplicative of Count I. Defendant objects to the Report's summary judgment conclusion on Count I but does not object to the Report's treatment of Count II [ECF No. 48]. The Report is ripe for adjudication [ECF Nos. 47–49].

## LEGAL STANDARDS

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation

to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## DISCUSSION

Upon de novo review of the Report in light of Defendant's Objections, the Court accepts the well-reasoned Report [ECF No. 48].

The Report recommends denying Defendant's Motion on Count I (breach of contract) because a question of facts exists on two issues: whether Defendant had a right to terminate the Policy in the first instance, and if so, whether Defendant mailed the Notice [ECF No. 47]. This conclusion is correct: genuine disputes remain as to the accuracy of Defendant's calculation of Plaintiff's indebtedness, which raises a triable issue of fact concerning the "overloaned status" of the policy. Additionally, and again for purposes of summary judgment, Defendant has not proffered evidence sufficient to determine as a matter of law that it mailed the Notice to Plaintiff. *See* Fed. R. Civ. P. 56(a) (permitting summary judgment only if movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law").

CASE NO. 22-14263-CIV-CANNON/McCabe

Defendant's objections do not reveal error in the Report.[3]

***First***, Defendant argues that there is no genuine dispute as to payments made on the policy by Plaintiff and then reasons from that conclusion that summary judgment is warranted on Count I [ECF No. 48 p. 1]. This objection is misplaced. While there may be no dispute of fact that Plaintiff made payments on the Policy in 2014, 2015, 2018, 2019, and 2020, as the Report correctly concludes, there are factual disputes regarding whether those payments adequately covered the balance of the premium [ECF No. 47 p. 9]. Plaintiff claims that the two payments made via check in 2018 and 2020, totaling over $40,000.00, should have sufficiently covered the premium amount for the disputed years between the parties—thus raising a question as to the true and correct calculation of the Policy's total indebtedness. This, in turn, determines whether the Defendant had the right to terminate the Policy. Moreover, the Report correctly determines that Defendant failed to provide the type of documentation that would be required—at the summary judgment stage—to resolve these factual disputes about total indebtedness and cash value [*see* ECF No. 42-4 pp. 7–10]. For these reasons, notwithstanding Defendant's objection, the Report correctly determines that the record contains material factual disputes as to the cash value of the Policy and the "overloaned status" of the Policy in 2021.

***Second***, also on the subject of the "overloaned status" of the Policy, Defendant objects to the Report's reliance on the July 2021 Annual Statement and the September 2021 Surrender Notice [ECF No. 48 pp. 2–4]. In Defendant's view, the documents are irrelevant because they were automatically generated by its systems and were manually removed from the system and never sent them to Plaintiff [ECF No. 48 p. 3]. Accordingly, Defendant reasons, the Report should not

---

[3] Defendant does not object to the Report's conclusion that Count II of Plaintiff's Complaint seeking declaratory relief is entirely duplicative of Count I for breach of contract [ECF No. 49]. The Court finds no error in this determination and accepts it in full.

5

have relied on these documents to establish a genuine dispute of fact regarding the "overloaned status" of the Policy [ECF No. 48 p. 3]. The Court again disagrees. Defendant's inability to present a clear calculation of the Policy's total indebtedness is the reason why these documents are relevant because they raise questions for a jury as to Defendant's right to terminate the Policy. The Report does not err in relying on the documents in its decision.

***Third***, Defendant objects to what it considers a determination in the Report that the Policy required the Notice to identify the total indebtedness and cash value and also to explain how Defendant calculated the "overloaned amount" [ECF No. 48 p. 4]. Defendant's position is that the Policy does not require notices to contain that type of information and thus that it cannot be faulted for not including that information in the subject Notice. Upon review, the Court determines Defendant's objection to rest on a misunderstanding of the Report. The Report does not conclude that the Policy required the Notice to specify the Policy's total indebtedness, cash value, or provide an explanation of how Defendant arrived at the requested amount [*see* ECF No. 47 p. 5]. Instead, the Report observes that the lack of a calculation regarding the total indebtedness in the Notice contributes to the genuine dispute of material fact regarding the "overloaned status." This objection fails.

***Finally,*** Defendant objects to the Report's reliance on "mistakes" in Defendant's automated systems as support for its conclusion that material factual disputes exist concerning Defendant's mailing of the Notice [ECF No. 48 pp. 5–6]. As background, the Report relied on two examples of mistakes generated by Defendant's automated systems, among other evidence, to find a triable fact question as to whether Defendant mailed the Notice to Plaintiff [ECF No. 47 p. 13]. On this issue, Defendant takes the position that automated processes are separate from mailing procedures and thus should not be used as evidence of mailing of printed notices [ECF No. 48 p. 5]. Defendant also takes issue with the existence of "mistakes" in the first instance,

6

arguing that its automated systems "produced exactly what they were meant to" [ECF No. 48 p. 5] This objection does not reveal error in the Report's ultimate determination of disputed facts. Even assuming Defendant is correct in its characterization of "mistakes" or lack of "mistakes" in its automated systems and the relevance of any such "mistakes" as to mailing, the Report is clear that it relied on multiple pieces of evidence to arrive at its conclusion that summary judgment is not appropriate on the question of mailing. The Court has reviewed that evidence and agrees that factual questions remain on the mailing issue for a trier of fact to decide.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 47] is **ACCEPTED.**

2. Defendant's Motion for Summary Judgment [ECF No. 33] is **GRANTED IN PART AND DENIED IN PART** in accordance with this Order, for the reasons set forth in the underlying Report.

    a. Defendant's Motion is **GRANTED** as to Counts II of Plaintiff's Complaint.

    b. Defendant's Motion is **DENIED** as to Counts I of Plaintiff's Complaint.

3. The current stay on pretrial deadlines is hereby lifted [ECF No. 46], with an order resetting the deadline for pretrial filings and trial to follow.

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 24th day of April 2024.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc:     counsel of record